22-4
Mandala v. NTT Data, Inc.

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2022
Argued: May 4, 2023
Decided: December 8, 2023

No. 22-4

_____

GEORGE MANDALA AND CHARLES BARNETT, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellants,

v.

NTT DATA, INC.,

Defendant-Appellee.

_____

Before: KEARSE, JACOBS, and SULLIVAN, Circuit Judges.

This appeal arises from the denial of plaintiffs' motion to vacate the
judgment of dismissal and for leave to file a first amended complaint.   The
United States District Court for the Western District of New York (Siragusa, J.)
construed plaintiffs' motion as arising under Federal Rule of Civil Procedure
60(b)(1) and denied the motion as untimely per the applicable one-year filing
window.   The court held in the alternative that plaintiffs' motion fails under
Rule 60(b)(6), which does not have a strict time limit, but which requires a
showing of extraordinary circumstances to merit relief from judgment.   For the

reasons explained herein, we conclude that Rule 60(b)(1) is inapplicable, and the unique facts of this case necessitate post-judgment relief under Rule 60(b)(6). Accordingly, we **REVERSE** the denial of Plaintiffs' motion to vacate the judgment of dismissal and for leave to file a first amended complaint, and **REMAND** for further proceedings consistent with this opinion.

Judge Sullivan dissents in a separate opinion.

_____

> CHRISTOPHER MCNERNEY (Ossai Miazad, on the brief), Outten & Golden LLP, New York, NY, and TIFFANI BURGESS (Samuel Spital and Rachel M. Kleinman, on the brief), NAACP Legal Defense & Educational Fund, Inc., New York, NY, for Plaintiffs-Appellants.
>
> JACQUELINE P. POLITO (Abigail L. Giarrusso, on the brief), Littler Mendelson, P.C., Fairport, NY, for Defendant-Appellee.

DENNIS JACOBS, Circuit Judge:

The appeal in this Title VII suit challenges the denial of a motion to vacate the judgment of dismissal and to file a first amended complaint. After the complaint was dismissed for failure to state a claim, plaintiffs pursued a hotly contested appeal, which resulted in a split panel decision in this Court affirming the dismissal, and an in banc petition that was ultimately denied over the dissent of five judges. Plaintiffs then asked the district court to vacate the judgment of dismissal so they could (attempt to) cure the pleading deficiencies.

2

Construing plaintiffs' vacatur request as arising from their own "mistake, inadvertence, surprise, or excusable neglect" under Federal Rule of Civil Procedure 60(b)(1), the district court denied the motion—brought twenty months after entry of the judgment of dismissal—as untimely under the one-year filing window that governs Rule 60(b)(1).   The court held in the alternative that under Rule 60(b)(6), which requires only that the motion be brought within a reasonable time, no extraordinary circumstances entitle plaintiffs to relief from judgment.

On appeal, plaintiffs argue that their motion falls outside the scope of Rule 60(b)(1) and instead must be analyzed under the catchall provision of Rule 60(b)(6).   Plaintiffs further contend that this case is among the few that justifies relief from final judgment under 60(b)(6), and the district court exceeded the bounds of its discretion in concluding otherwise.   We agree on both counts.

**BACKGROUND**

**I**

In 2017, George Mandala and Charles Barnett ("Plaintiffs") applied for jobs at NTT Data, Inc. ("NTT"), one of the world's largest information technology service providers.   Mandala applied to be a salesforce developer and was hired

3

after his last round of interviews.  Upon accepting NTT's offer, Mandala authorized the company to run a routine background check.  A week later, a representative from NTT informed Mandala that the company had a policy against hiring individuals with a felony conviction.  A letter followed, withdrawing his job offer.  Mandala then filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and a year later, in May 2018, the EEOC issued Mandala a Notice of Right to Sue.

Charles Barnett had a similar experience.  In July 2017, NTT contacted Barnett regarding an opportunity to contract as a web developer for the Commonwealth of Kentucky.  Barnett, who had an associates degree and a masters in the field of computer science, had previously worked for the Commonwealth of Kentucky as an administrative specialist performing IT and other services.  He applied for the role with NTT, was offered the position, and accepted.  Barnett then authorized NTT to run a background check.  As with Mandala, NTT withdrew Barnett's offer of employment when the check turned up a prior conviction.  Barnett tried to apply for other contracting positions overseen by NTT, but the company informed him that it would not consider his applications.

## II

In August 2018, Mandala and Barnett filed a putative class action against NTT, asserting a claim of disparate impact discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e et seq., as well as state law claims under New York's human rights and general business laws.

The gist of the Title VII claim is that NTT's blanket practice of refusing to employ people with felony convictions disproportionately harms Black applicants because Black people are arrested and incarcerated at higher rates than others.   The Complaint cites reports by the Department of Justice, Census Bureau, and EEOC, and it references studies showing that: Black people who made up 13% of the U.S. population in 2010 constituted 40% of the U.S. prison population at that time; that an estimated one out of every three Black males born today will go to prison, compared to just one out of every seventeen white males; and that Black applicants with criminal records are more disadvantaged in the job market as compared to other applicants.   Compl. ¶¶ 52–54.

The United States District Court for the Western District of New York (Siragusa, J.) dismissed the Complaint for failure to state a claim of disparate

impact under Title VII, presumably with prejudice.[1]  See Mandala v. NTT Data, Inc. ("Mandala I"), No. 18-CV-6591, 2019 WL 3237361, at *4 (W.D.N.Y. July 18, 2019).  The court discounted the "general statistics" cited in the Complaint as "inadequate to show" a "statistical disparity in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers *in the pool of qualified applicants for [NTT's] positions*."  Id. at *3–4 (emphasis added).  Plaintiffs timely appealed.

A split panel of this Court affirmed.  See Mandala v. NTT Data, Inc. ("Mandala II"), 975 F.3d 202 (2d Cir. 2020).  The majority agreed with the district court that "the statistical analysis [set forth in the Complaint]" did not "focus on the disparity between appropriate comparator groups," id. at 210 (citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 651 (1989))—i.e., individuals who possess the necessary "educational and technical qualifications to work at NTT," id. at 212.  Recognizing, however, that such granular data may be impossible to

---

[1] Neither the opinion nor the judgment expressly stated that the dismissal was with prejudice.  However, that is the relief NTT sought in its motion to dismiss, and the court granted the motion in its entirety, and then directed the clerk's office to enter judgment for NTT and close the case.  The court also declined to exercise supplemental jurisdiction over the state law claims.

collect without discovery, the majority suggested that the Complaint might have survived dismissal if it had contained allegations explaining "why their chosen national statistics are in fact likely to be representative of NTT's qualified applicant pool." Id. at 212. The dissent countered that "the national statistics and other facts alleged by [P]laintiffs were sufficient" to withstand a motion to dismiss a disparate impact claim; and that the district court (and the majority) erroneously held the Complaint to the higher standards for *proving* such a claim. Id. at 215 (Chin, J., dissenting).

Plaintiffs' subsequent petition for rehearing in banc was denied, eliciting opinions both in support and in opposition to rehearing.[2] See Mandala v. NTT Data, Inc. ("Mandala III"), 988 F.3d 664 (Mem.) (2d Cir. 2021). Several of the opinions referenced an amicus brief in support of rehearing filed by a group of criminology and sociology professors, which identified a study suggesting that racial disparities in the rates of imprisonment persist as education levels rise. See Br. for Megan C. Kurlychek et al. as Amici Curiae Supporting Appellants at 8–9, Mandala III, 988 F.3d 664 (No. 19-2308). Judges opposing rehearing in banc

---

[2] Five judges concurred by opinion in the denial of rehearing; five judges dissented by other opinions.

acknowledged that the amici's data "might have rendered Plaintiffs' claims plausible," but pointed out that the study predated the filing of the Complaint and was publicly available, so Plaintiffs could have cited it. Mandala III, 988 F.3d at 668 (Sullivan and Nardini, JJ., concurring in the order denying rehearing in banc). One dissenting opinion, signed by four judges, encouraged Plaintiffs to seek vacatur and leave to file an amended complaint. Id. at 671 (Pooler, J., dissenting from the order denying rehearing in banc). That is what Plaintiffs did.

In March 2021, just a few weeks after in banc rehearing was denied, Plaintiffs moved the district court to vacate the judgment dismissing the Complaint under Federal Rule of Civil Procedure 60(b) and for leave to file a first amended complaint under Rule 15.[3] Plaintiffs sought vacatur under Rule 60(b)(6). The district court, however, viewed the motion as being "premised on their own mistake, inadvertence, and neglect"—the specific grounds listed in

---

[3] As a matter of procedure, "[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). Rule 60(b) contains six subsections: (1)-(5) identify specific grounds for reopening a judgment, and (6) is a catchall provision for "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Rule 60(b)(1). Mandala v. NTT Data, Inc. ("Mandala IV"), No. 18-CV-6591, 2021 WL 5771154, at *5 (W.D.N.Y. Dec. 6, 2021); see Fed. R. Civ. P. 60(b)(1). This distinction is crucial: while a 60(b)(1) motion to vacate must be filed within one year of entry of the judgment, a 60(b)(6) motion need only be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). Noting that Plaintiffs' motion came one year and eight months after the judgment of dismissal was entered, the district court denied it as untimely under Rule 60(b)(1). Mandala IV, 2021 WL 5771154, at *5. The court further held that, even if considered under Rule 60(b)(6), the motion would fail on the merits. Id. at *5–6. Plaintiffs challenge both rulings on appeal.

## DISCUSSION

"A denial of a motion to vacate a judgment under Rule 60(b) is reviewed for abuse of discretion," Ruotolo, 514 F.3d at 191 (citation omitted), as is a "district court's denial of a post-judgment motion for leave to replead," Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks and citation omitted). "Under this standard, we must affirm the . . . denial of vacatur, unless the ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Rodriguez v.

9

Mitchell, 252 F.3d 191, 200 (2d Cir. 2001) (internal quotation marks, citation, and alteration omitted).   On the facts of this case, we conclude that the district court abused its discretion in analyzing Plaintiffs' vacatur motion under Rule 60(b)(1), and in denying Plaintiffs relief from final judgment under Rule 60(b)(6).

## I

"Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'"   Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting United States v. Cirami, 535 F.2d 736, 740 (2d Cir. 1976)).   Thus, "[w]here a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed."   Id. (citing Klapprott v. United States, 335 U.S. 601, 614 (1949)).   Proper characterization of Plaintiffs' Rule 60(b) motion is a threshold issue because, as previously explained, the two provisions are subject to different filing limitations: Rule 60(b)(1) has a one-year window that runs from the entry of judgment; Rule 60(b)(6) requires only that the motion be brought within a "reasonable time." Fed. R. Civ. P. 60(c)(1).

10

The district court construed Plaintiffs' vacatur motion as "premised on their own mistake, inadvertence, and neglect" because their Complaint "did not meet a well-settled standard." Mandala IV, 2021 WL 5771154, at *5. Although the Complaint was found to have failed to state a claim, insufficient pleading is not categorically a "mistake," and Plaintiffs' belief that their Complaint satisfied the standards for pleading a disparate impact claim was well-founded, even if ultimately erroneous.

To start, the ground for dismissing the Complaint—that racial disparities in national arrest and incarceration rates do not necessarily persist among persons with the skill set required for the jobs in question—is not self-evident. Skills are acquired by adults; nobody is born with a resume. Every qualified candidate for employment was once a kid, youngster, and teenager. Plaintiffs reasonably could have assumed that they need not allege the persistence of disparate patterns of arrest and conviction among people seeking skilled employment, because even skilled persons are assumed to have lived life before becoming credentialed.

Plaintiffs likewise could have assumed that they did not need to search out and plead a study to that effect, because it is abnormal to require the pleading of

11

evidence in a complaint. See Arista Records LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (stating plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality") (alteration omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) ("[T]his Court has repeatedly warned that the pleading requirements in discrimination cases are very lenient, even de minimis." (internal quotation marks and citation omitted)); Gordon v. City of New York, No. 14 Civ. 6115, 2016 WL 4618969, at *4 (S.D.N.Y. Sept. 2, 2016) ("A plaintiff need not plead facts sufficient to establish a prima facie case in his complaint in order to survive a motion to dismiss." (internal quotation marks and citation omitted)); see also Adkins v. Morgan Stanley, No. 12 Civ. 7667, 2013 WL 3835198, at *10 (S.D.N.Y. July 25, 2013) ("Plaintiffs' allegations . . . are sufficient to give notice to [defendant] of[ ]a plausible claim of disparate impact. Whether those statistics may prove insufficient at a later date is not now a question before this court."); Jenkins v. N.Y.C. Transit Auth., 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery." (citation omitted)).

Moreover, as far as we can tell, no Second Circuit case decided prior to Plaintiffs' suit had applied the standard requiring granular statistical comparators at the pleading stage of a Title VII disparate impact suit.   It appears that every Supreme Court and Second Circuit case discussing the subject had been decided after discovery or even after trial.[4]

And when this Court was called upon to review the sufficiency of the Complaint, our decision affirming dismissal elicited a vigorous dissent, which argued, among other things, that "the national statistics and other facts alleged by [P]laintiffs were sufficient . . . to meet [the] minimal burden" of pleading a disparate impact claim.   Mandala II, 975 F.3d at 215 (Chin, J., dissenting).   The denial of Plaintiffs' petition for rehearing in banc was also closely contested, with

---

[4] See City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989) (bench trial); Wards Cove, 490 U.S. at 648 (bench trial); Dothard v. Rawlinson, 433 U.S. 321 (1977) (three-judge bench trial); Hazelwood Sch. Dist. v. United States, 433 U.S. 299 (1977) (bench trial); Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012) (post-trial judgment as a matter of law); Wharff v. State Univ. of N.Y., 413 F. App'x 406 (2d Cir. 2011) (summary order) (summary judgment); Lomotey v. Ct.-Dep't of Transp., 355 F. App'x 478 (2d Cir. 2009) (summary order) (summary judgment); Malave v. Potter, 320 F.3d 321 (2d Cir. 2003) (summary judgment); Guardians Ass'n of N.Y.C. Police Dep't, Inc. v. Civil Serv. Comm'n of City of N.Y., 630 F.2d 79 (2d Cir. 1980) (bench trial); Jones v. N.Y.C. Human Res. Admin., 528 F.2d 696 (2d Cir. 1976) (bench trial).

13

five judges of this Court arguing in favor of rehearing. See Mandala III, 988 F.3d at 664.

The circumstances distinguish this case from the typical Rule 60(b)(1) cases, which characteristically involve mistakes that amount to a fumble. See, e.g., Miller, 676 F.3d at 65, 68 (government let its time to appeal expire due to failure to check docket); Warren v. Garvin, 219 F.3d 111, 114–15 (2d Cir. 2000) (plaintiff failed to raise claim within statute of limitations window due to neglect); see also Arrieta v. Battaglia, 461 F.3d 861, 864–65 (7th Cir. 2006) (plaintiff voluntarily moved to dismiss an action that then could not be refiled due to the expiration of the statute of limitations). Plaintiffs' decision to stand by a pleading deemed to be sufficient by several judges of this Court cannot seriously be considered a mistake within the meaning of Rule 60(b)(1).

Finally, even if we were to accept the district court's view that Plaintiffs' vacatur motion arises from a legal mistake based on insufficient pleading, Rule 60(b)(1) would be inapplicable. When post-judgment relief is sought for the purpose of curing a pleading deficiency, this Court typically applies Rule 60(b)(6) to consider whether the circumstances warrant vacatur. See, e.g., Ind. Pub. Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 92–93 (2d Cir. 2016) (vacating in part denial of

14

motion under Rule 60(b)(6) where plaintiff's proposed amendment to bolster securities claim would not have been futile); LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001) (vacating denial of motion under Rule 60(b)(6) where movant sought amendment to drop non-diverse co-plaintiff); see also Strategic Cap. Dev. Grp., Ltd. v. Sigma-Tau Pharms., Inc., Nos. 98-7144, 99-7364, 1999 WL 973313, at *1 (2d Cir. Sept. 23, 1999) (unpublished) (vacating denial of vacatur motion under Rule 60(b)(6) where plaintiff sought first opportunity to replead soon after entry of judgment).   So, while some kinds of legal error are properly analyzed under 60(b)(1), see, e.g., Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986) (plaintiff did not contemplate or understand the breadth of his voluntary stipulation of dismissal), a vacatur motion that seeks to rectify a deficient pleading warrants consideration of the circumstances under 60(b)(6).

We therefore conclude that Plaintiffs' motion to vacate the judgment of dismissal in order to file a first amended complaint cannot fairly be classified as falling within the scope of Rule 60(b)(1) rather than Rule 60(b)(6).   See United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009) (holding vacatur motion "is not easily categorized as 'mistake' or 'inadvertence' under Rule 60(b)(1), and it should therefore be allowed to proceed under Rule 60(b)(6)").   The district court

15

thus clearly erred in denying the motion as untimely under the one-year limit of 60(b)(1).

## II

## A

Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988) (internal quotation marks and citation omitted). "[I]t constitutes a grand reservoir of equitable power to do justice in a particular case." Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (internal quotation marks and citation omitted). "But that reservoir is not bottomless." Miller, 676 F.3d at 67. Relief under Rule 60(b)(6) is reserved for cases that present "extraordinary circumstances." Liljeberg, 486 U.S. at 863–64 (quoting Ackermann v. United States, 340 U.S. 193 (1950)).

When vacatur is sought in order to obtain leave to file an amended complaint, special considerations come into play. See Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011) (per curiam). "In the ordinary course, the

16

Federal Rules of Civil Procedure provide that courts 'should freely give leave' to amend a complaint 'when justice so requires.'" Id. (quoting Fed. R. Civ. P. 15(a)(2)). "Where, however, a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality." Id. at 213. So, on a post-judgment motion for vacatur and leave to amend, "due regard" must be given to *both* the "philosophy favoring finality of judgments and the expeditious termination of litigation," and the "liberal amendment policy of Rule 15(a)." Id. (internal quotation marks and citations omitted). After all, the "'whole purpose' of Rule 60(b) 'is to make an exception to finality,'" Buck v. Davis, 580 U.S. 100, 126 (2017) (quoting Gonzalez v. Crosby, 545 U.S. 524, 529 (2005)), and the Rule is "designed to afford parties an opportunity to resolve a dispute on its merits," Nemaizer, 793 F.2d at 63.

"In the post-judgment context, we have . . . given 'due regard' to 'the liberal spirit of Rule 15' by ensuring plaintiffs at least one opportunity to replead." Metzler, 970 F.3d at 146 (quoting Williams, 659 F.3d at 213–14). In most if not all Second Circuit cases denying post-judgment leave to replead, the plaintiff had already taken at least one shot at amendment. See id. at 145 (affirming denial of motion to file third amended complaint); see also Schwartz

17

v. HSBC Bank USA, N.A., 750 F. App'x 34, 35 (2d Cir. 2018) (summary order) (affirming denial of motion to file third amended complaint); Smith v. Hogan, 794 F.3d 249, 256 (2d Cir. 2015) (affirming denial of motion seeking reconsideration for the second time and leave to file a second amended complaint). This makes sense: when a plaintiff already had multiple chances to state a claim, there is little risk of manifest injustice in denying yet another go. See Metzler, 970 F.3d at 147 ("[A] plaintiff afforded attempt after attempt . . . might one day succeed in stating a claim[,] [b]ut the federal rules and policies behind them do not permit such limitless possibility.").

Plaintiffs here seek to file a first amended complaint. In that event, "it is an abuse of discretion to deny" post-judgment relief, Metzler, 970 F.3d at 144, "without any justifying reason," such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," Foman v. Davis, 371 U.S. 178, 182 (1962).[5]

---

[5] The dissent argues that the district court did indeed provide a "justifying reason" for denying leave to amend. In circular fashion, it identifies the

18

**B**

In denying the vacatur motion, the district court "applied a standard that overemphasized considerations of finality at the expense of the liberal amendment policy embodied in the Federal Rules of Civil Procedure" and this Court's "strong preference for resolving disputes on the merits."   See Williams, 659 F.3d at 210, 212–13 (internal quotation marks and citation omitted).   Prior to the filing of the vacatur motion, Plaintiffs had neither requested nor been afforded a first opportunity to replead, and the district court had dismissed their Complaint under Rule 12(b)(6) with prejudice.   Rather than weighing this posture as a factor that favors relief from judgment, the district court faulted Plaintiffs for failing to seek such relief earlier.   The court reasoned that Plaintiffs were on notice of the potential insufficiency of their allegations based on the arguments "raised both in NTT's motion papers and during oral argument" on the motion to dismiss, but Plaintiffs made a "strategic decision" "to stand by their original complaint" and "test the theory of law that they believed to be proper."   Mandala IV, 2021 WL 5771154, at *6–8.   Second Circuit precedent

"justifying reason" for denying post-judgment relief as the failure to demonstrate adequate grounds for relief under Rule 60. Q.E.D.

19

makes clear, however, that the failure to seek leave to amend pre-judgment, standing alone, does not constitute undue delay or otherwise justify denying relief from judgment for a plaintiff seeking to file a first amended complaint. See Williams, 659 F.3d at 214.

In Williams, the district court dismissed the original complaint with prejudice for failure to state a claim, and the plaintiff then filed a motion seeking relief under Rules 60 and 15 to remedy the pleading defects identified in the dismissal order. Id. at 211–12. The requested relief was denied principally on the grounds that the plaintiff failed to "explain why she should be granted leave to replead at this stage when she failed to request an opportunity to replead in the first instance." Id. at 212. On appeal, we ruled that the court's reasoning could not be reconciled with the Supreme Court's decision in Foman v. Davis. Id. at 214. Although the Foman plaintiff had not sought leave to file an amended complaint prior to the district court's entry of judgment, the Supreme Court held that the denial of the plaintiff's post-judgment motion to replead lacked any "justifying reason" and vacated the lower court's ruling. 371 U.S. at 182. Consistent with Foman, Williams concluded that the denial of relief solely

20

for failure to seek amendment pre-judgment was "not a proper exercise of the district court's discretion."   659 F.3d at 214.

This Court has applied Williams and Foman in the Rule 15 context to hold that, in the absence of a valid rationale like undue delay or futility, it is improper to simultaneously dismiss a complaint with prejudice under Rule 12(b)(6) and deny leave to amend when the district court has not adequately informed the plaintiffs of its view of the complaint's deficiencies.   See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 189–90 (2d Cir. 2015) (vacating denial of leave to amend); Cresci v. Mohawk Valley Cmty. Coll., 693 F. App'x 21, 25 (2d Cir. 2017) (summary order) (reversing denial of leave to amend); see also Noto v. 22nd Century Grp., Inc., 35 F.4th 95, 107 (2d Cir. 2022) ("[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." (internal quotation marks and citation omitted)); Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 833 (2d Cir. 2019) (noting the Second Circuit has been "particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue"); 421-A Tenants Ass'n, Inc. v. 125 Court St. LLC, 760 F. App'x 44, 51 (2d Cir. 2019) (summary order) (stating "it is often improper to

deny leave to amend" when "the plaintiff lacks the benefit of a ruling from the court" (internal quotation marks and citation omitted)).

Loreley is instructive. There, at a pre-motion conference on the motion to dismiss, the district court "presented [the] [p]laintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." 797 F.3d at 190. Solely because the plaintiffs opted not to amend their complaint at that point, the district court rendered its judgment of dismissal with prejudice. Id. On appeal, we concluded that the court exceeded the bounds of discretion in denying plaintiffs an opportunity to amend: "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Id. This is especially so when (as here) the "pleading defects" are "borderline, and hence subject to reasonable dispute." Id. at 191. We thus held that the court clearly erred by "treat[ing] Plaintiffs' decision to stand by the complaint after a preview of Defendants' arguments—in the critical absence of a definitive ruling—as a forfeiture of the protections afforded by Rule 15." Id. at 190.

As the foregoing cases demonstrate, Plaintiffs had no obligation to "seek leave to replead . . . immediately upon answering the motion to dismiss the complaint (without yet knowing whether the court w[ould] grant the motion, or, if so, on what ground) . . . ." Williams, 659 F.3d at 214. The district court thus erred in relying on that procedural fact to justify denying Plaintiffs' motion for vacatur and leave to amend.

Likewise, Plaintiffs cannot be foreclosed from obtaining post-judgment relief solely because they chose to appeal rather than seek vacatur immediately upon dismissal of their claim. True, in both Foman and Williams, the plaintiff moved to vacate the judgment directly after the court's dismissal of the suit. But we have found relief from judgment to be warranted in cases involving more circuitous paths. SAIC is one example. There, the district court dismissed in part the first amended complaint and gave the plaintiffs leave to amend the dismissed claims. 818 F.3d at 91. The plaintiffs elected to forgo that option and to proceed with their surviving claims. Id. On the defendant's motion for reconsideration, the court reversed course and dismissed the complaint in full, with prejudice. Only then did plaintiffs seek leave to amend their complaint.

23

Id. The district court denied the requested post-judgment relief, and we reversed, holding the proposed amendments were not futile. Id. at 92–94.

In the same way, these Plaintiffs diligently prosecuted their case at all times. Given the wording of the district court's opinion on the motion to dismiss, Plaintiffs could have reasonably believed that it would have been impossible to cure the pleading deficiencies to the court's satisfaction without discovery. The district court ruled that "general statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African American[] and their respective rates of felony convictions," and "[t]he statistics Plaintiffs cite in the complaint do not indicate whether the individuals in the general population cited shared qualifications that would make them viable candidates for either of the positions offered to Plaintiffs." Mandala I, 2019 WL 3237361, at *3–4. The court gave no indication that this deficiency could be remedied through anything less than data corresponding to the actual characteristics of NTT's employees—information known only to NTT.

It wasn't until this Court's decision on appeal that it became clear what other types of information might suffice at the pleading stage. In affirming the district court's dismissal of the Complaint, we agreed that Plaintiffs failed to

24

demonstrate "that the general population statistics on which they rely might accurately reflect NTT's pool of qualified job applicants." Mandala II, 975 F.3d at 211 (internal quotation marks, citation, and alteration omitted). But we also acknowledged that "Plaintiffs are undoubtedly working from an informational disadvantage at this early point in the proceedings." Id. at 212. Given that Plaintiffs lack "access to more granular data" at the pleading stage, we explained that they might instead be able to state a claim for disparate impact by "provid[ing] additional allegations to explain why their chosen national statistics are in fact likely to be representative of NTT's qualified applicant pool," or by "identify[ing] other publicly available information that could plausibly support a Title VII claim." Id.

Plaintiffs then timely filed a petition for rehearing in banc, requesting, in the alternative to reversal, that we remand the case to permit Plaintiffs a first opportunity to seek leave to amend their Complaint. When, four months later, this Court denied rehearing, Plaintiffs promptly sought relief in the district court. Although Plaintiffs' vacatur motion ultimately came one year and eight months after the judgment of dismissal, the timing was reasonable given the procedural history.

Finally, there are no "justifying reason[s]," Foman, 371 U.S. at 182, for depriving Plaintiffs of the chance to obtain relief from judgment and file an amended complaint for the first time. There is no plausible contention of bad faith or dilatory motive, nor that vacatur would unduly prejudice the Defendant. There was no undue delay, for the reasons explained above. And the district court did not conclude that Plaintiffs' proposed amendments would be futile. To the contrary, the court acknowledged the relevance of the amici's data indicating that racial disparities in criminal outcomes persist at higher levels of education, and noted that in the in banc memoranda, several judges of this Court "suggested these statistics 'might' have rendered Plaintiffs' claims plausible had they been included in the original pleadings." Mandala IV, 2021 WL 5771154, at *2 (quoting Mandala III, 988 F.3d at 668). This is the sort of case in which it is "appropriate . . . to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." Williams, 659 F.3d at 213 (quoting Ruotolo, 514 F.3d at 191).

The district court seemingly gave no weight to the viability of Plaintiffs' proposed amendment because it was based on information that was publicly available for years prior to the filing of the Complaint. Even assuming the

26

information was obtainable, standing alone that is not a basis for depriving Plaintiffs of a first opportunity to add allegations that render their claim plausible. As the Supreme Court has explained, when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman, 371 U.S. at 182; see also Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (reversing denial of pro se plaintiff's Rule 60(b) motion, noting courts "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").

In sum, this is one of the exceptional cases necessitating relief from judgment: Plaintiffs have yet to be afforded a single opportunity to amend their pleading; the original dismissal of the Complaint was premised on grounds subject to reasonable, actual, and vigorous debate; Plaintiffs diligently prosecuted their case at all times; and Plaintiffs' proposed amendments address the sole pleading deficiency identified by the district court. On these facts, the court's contrary holding was not a proper exercise of discretion.

## CONCLUSION

For these reasons we **REVERSE** the denial of Plaintiffs' motion to vacate the judgment of dismissal and for leave to file a first amended complaint, and **REMAND** for further proceedings consistent with this opinion.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting:

I dissent from the majority's decision because I cannot agree that the district court abused its discretion in concluding that Federal Rule of Civil Procedure 60(b)(1), as opposed to Rule 60(b)(6), applies to Plaintiffs' motion to vacate the district court's judgment of dismissal. But even if it could be argued that Rule 60(b)(6) applies in this case, I would still affirm because I agree with the district court that Plaintiffs failed to demonstrate extraordinary circumstances warranting relief. For these reasons, I would affirm the district court's order denying Plaintiffs' motion to vacate the judgment.

As an initial matter, I emphasize that the standard of review in this appeal is abuse of discretion. *See ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 172 (2d Cir. 2022). A district court abuses its discretion only when "its decision [(1)] rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within the range of permissible decisions." *Id.* (internal quotation marks omitted). The relevant inquiry is therefore not whether Plaintiffs might have "reasonably . . . assumed that they need not allege" certain facts in their complaint in order to state a claim, Maj. Op. at 11, but rather whether the district court's decision is erroneous or cannot be found within the range of permissible decisions.

Given this deferential standard of review, I am hard pressed to see how the district court's decision could constitute an abuse of discretion.

In my view, the district court did not err in construing Plaintiffs' motion as one for relief under Rule 60(b)(1) rather than Rule 60(b)(6). Recognizing the concern that "parties may attempt to use Rule 60(b)(6) to circumvent the one-year time limitation in other subsections of Rule 60(b)," we have long recognized that "Rule 60(b)(1) and Rule 60(b)(6) are mutually exclusive, such that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks omitted). "Where a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Id.* at 67–68 (citing *Klapprott v. United States*, 335 U.S. 601, 614 (1949)).

In their motion to vacate, Plaintiffs asserted that the pleading standard "for relief under Title VII . . . was previously unclear," and the supposed clarifications set forth in the Court's opinions on appeal and in connection with the denial of *en banc* review justify vacatur of the district court's judgment. J. App'x at 106–07. But in concurring with the denial of *en banc* review, the majority of this Court's active members *explicitly* rejected the contention that the Court's decision on appeal,

2

*Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020), clarified or otherwise changed the plausibility standard for Plaintiffs' claims. *See Mandala v. NTT Data, Inc.*, 988 F.3d 664, 665 (2d Cir. 2021) (Sullivan, J., and Nardini, J., concurring) (noting that the panel majority opinion reflected "a heartland application of the plausibility pleading standard that has been the law of this Circuit for more than a decade"). Therefore, Plaintiffs' contention that these proceedings provided "much-needed clarity" regarding the requisite pleading standard, J. App'x at 109; *see also id.* at 96, 106–07, evinces a misunderstanding of our prior opinions in this case, as well as the well-established law of this Circuit, *see Malave v. Potter*, 320 F.3d 321, 326 (2d Cir. 2003) (explaining that general population statistics are permissible only when such statistics "accurately reflect the pool of qualified job applicants" for the positions in question (internal quotation marks omitted)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (applying the plausibility standard to a Title VII disparate-treatment claim); *Littlejohn v. City of New York*, 795 F.3d 297, 310–11 (2d Cir. 2015) (same). Plaintiffs' mistaken understanding as to the law places their motion squarely within the ambit of Rule 60(b)(1). *See Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) (explaining that "we have *consistently* declined to relieve a client under [Rule 60(b)(1)] of the burdens of

3

a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's *ignorance of the law*" (emphasis added and internal quotation marks omitted)).  As such, there can be no dispute that the district court properly denied the motion as untimely, since it was made more than a year after the judgment was issued.  *See* Fed. R. Civ. P. 60(c)(1); J. App'x at 3 (docket reflecting judgment in favor of NTT dated July 19, 2019, Dist. Ct. Doc. No. 28, and Plaintiffs' motion to vacate judgment dated March 31, 2021, Dist. Ct. Doc. No. 35).[1]

But even assuming that Plaintiffs' motion falls under Rule 60(b)(6) and not Rule 60(b)(1), I still cannot see how the district court abused its discretion in concluding that Plaintiffs failed to articulate an "extraordinary circumstance[]" justifying relief."  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (internal quotation marks omitted).  To the contrary, our precedents

---

[1] The majority's contention that Rule 60(b)(6) is categorically applicable when "post[]judgment relief is sought for the purpose of curing a pleading deficiency," Maj. Op. at 14, is mistaken.  *See, e.g., Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011) (affirming district court's order denying Rule 60(b)(1) motion to reconsider denial of request for leave to amend); Fed. R. Civ. P. 60(b)(2) (establishing a separate category of motions for reconsideration based on purportedly "newly discovered evidence").  Nor does *United Airlines, Inc. v. Brien*, 588 F.3d 158 (2d Cir. 2009), lend support to the majority's position on this point, as that case nowhere suggests that postjudgment requests for leave to amend "cannot fairly be classified as falling within the scope of Rule 60(b)(1)."  Maj. Op. at 15; *see also Brien*, 588 F.3d at 176 (finding that vacatur motions "based on the potential hardship resulting from inconsistent judgments" are properly brought under Rule 60(b)(6) because such claims are "not easily categorized as 'mistake' or 'inadvertence' under Rule 60(b)(1)").

4

and the established facts in the record confirm that there are no extraordinary circumstances here.

*First*, while discovery may be necessary in some circumstances to identify viable comparators, that is not the case here. As the majority acknowledges, *see* Maj. Op. at 7–8, and as the district court correctly noted, the "statistics that Plaintiffs seek to add to their complaint to correct the deficiencies in their pleadings were publicly available for nearly a decade prior to the filing of the complaint," *Mandala v. NTT Data, Inc.*, No. 18-cv-6591 (CJS), 2021 WL 5771154, at *8 (W.D.N.Y. Dec. 6, 2021); *see also Mandala*, 988 F.3d at 668 (Sullivan, J., and Nardini, J., concurring) ("[T]he very figures that might have rendered Plaintiffs' claims plausible not only exist but also are publicly available; Plaintiffs simply failed to include them in their pleadings."). Plaintiffs therefore cannot excuse their inadequate pleading on this basis. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 258 (2d Cir. 2014) (noting that "imprecise pleading is particularly inappropriate where the plaintiffs necessarily had access, without discovery, to specific information from which to fashion a suitable complaint" (internal quotation marks and alterations omitted)).

5

*Second*, even if we were to assume *arguendo* that the Court's prior decisions on appeal somehow clarified the requisite pleading standard for Plaintiffs' claims, the district court *still* would have been justified in concluding that Plaintiffs failed to identify extraordinary circumstances warranting relief. "As a general matter," even a "*change* in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)." *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (emphasis added and internal quotation marks and alterations omitted); *see also Stevens*, 676 F.3d at 68–69. It is therefore difficult to see how a mere *clarification* of decisional law would constitute an extraordinary circumstance here.

Plaintiffs' alternative argument – that the district court announced a *per se* rule that "'general' or national statistics were . . . 'inadequate' to show disparate impact," thereby depriving Plaintiffs of any "way forward" in their case, Plaintiffs' Br. at 8, 18 – is of no moment, since Plaintiffs themselves recognize that *this* Court never adopted such a *per se* rule and, in fact, described several ways in which Plaintiffs might meet their pleading burden using national statistics, *id.* at 8; *see also* Maj. Op. at 24 (recognizing that the Court's decision on appeal made "clear what other types of information might suffice at the pleading stage").

6

Rather than seek vacatur and leave to amend at that juncture, Plaintiffs instead opted to file a petition for rehearing *en banc* – a strategic choice that plainly undermines any argument that some aspect of the district court's order was an "extraordinary circumstance" preventing Plaintiffs from pursuing their claims.

Indeed, the record in this case reflects that Plaintiffs made a conscious and informed choice to pursue a particular litigation strategy. Plaintiffs were repeatedly apprised – in NTT's motion to dismiss, at oral argument on NTT's motion, and in the district court's order dismissing Plaintiffs' complaint – of the precise pleading defect that Plaintiffs now seek to remedy. *See* J. App'x at 36–37, 172–73; *Mandala v. NTT Data, Inc.*, No. 18-cv-6591 (CJS), 2019 WL 3237361, at *4 (W.D.N.Y. July 18, 2019). Rather than seek leave to amend at any prior stage, Plaintiffs stood by their pleading and opted to press for a lower pleading standard on appeal. When that too proved unsuccessful, Plaintiffs doubled down on their strategy by filing an *en banc* petition instead of a motion to amend. Plaintiffs' claim that, absent the requested relief, the district court's judgment will subject Plaintiffs to "extreme hardship" is therefore unpersuasive. Plaintiffs' Reply at 4. Because Plaintiffs "made a conscious and informed choice of litigation strategy," they

7

cannot "in hindsight seek extraordinary relief" when their preferred strategy failed. *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).

*Third*, the fact that Plaintiffs believe they are now able to effectively plead their claims does not mean that the district court abused its discretion in declining to vacate its prior judgment. We have held that a district court may not grant a postjudgment motion for leave to amend without first identifying "a valid basis to vacate the previously entered judgment." *Metzler*, 970 F.3d at 142 (internal quotation marks omitted). While it is undoubtedly true that we have a "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks omitted), it is equally true that the viability of a party's proffered amended pleading alone is an insufficient basis on which to grant Rule 60(b) relief, *see Metzler*, 970 F.3d at 142. The majority's decision thus undermines the principle that Rule 60(b)(6) affords litigants an *extraordinary* remedy and effectively holds that such relief is available in the ordinary course. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (noting that Rule 60(b) provides a "mechanism for extraordinary judicial relief" that can be invoked only upon a showing of exceptional circumstances (internal quotation marks omitted)); *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir.

8

2009) (same); *Nemaizer*, 793 F.2d at 61 (explaining that Rule 60(b) "allows extraordinary judicial relief").

Contrary to the majority's suggestion, the district court did not deny Plaintiffs' request for leave to amend "without any justifying reason." Maj. Op. at 18 (internal quotation marks omitted). The district court plainly denied Plaintiffs the opportunity to file an amended complaint because they "failed to demonstrate adequate grounds for relief from the [c]ourt's judgment under Rule 60."[2] *Mandala*, 2021 WL 5771154, at *4. The district court therefore did not need to additionally identify any "undue delay, bad faith or dilatory motive on the part of [Plaintiffs], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to [NTT] by virtue of allowance of the amendment, or futility of amendment," Maj. Op. at 18 (internal quotation marks and alterations omitted), in denying Plaintiffs' motion. *See Metzler*, 970 F.3d at 142–46 (rejecting the argument that the aforementioned standard applicable to pretrial motions for leave to amend

---

[2] The majority boldly contends that it is "circular" to conclude that a district court may deny a motion for relief under Rule 60(b)(6) when a party has failed to demonstrate entitlement to relief under that Rule. Maj. Op. at 18–19 n.5. But it is beyond cavil that a party's failure to demonstrate extraordinary circumstances is *alone* a sufficient justification for denying postjudgment relief under Rule 60(b)(6).

9

pursuant to Federal Rule of Civil Procedure 15(a)(2) is the governing standard for such motions in the postjudgment context).

The majority's reliance on *Williams v. Citigroup Inc.* is misplaced. *Williams* – which merely held that a district court may not deny a request for leave to amend *solely* on the basis that a plaintiff failed to request leave to replead before judgment was entered – does not stand for the proposition that a party who made a calculated decision to forgo seeking leave to amend in favor of other avenues of relief from judgment may subsequently seek leave to amend at any time and by any means. *See* 659 F.3d at 214. *Williams* therefore does not alter the obvious conclusion that the district court was within its discretion to deny Plaintiffs' motion here. *Id.* at 213 (recognizing that "Rule 15(a) [may not] be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation" (internal quotation marks omitted)).

For these reasons, I cannot join the majority in holding that the district court abused its discretion in concluding that Plaintiffs' motion was untimely pursuant to Rule 60(b)(1) and that Plaintiffs otherwise failed to identify extraordinary circumstances warranting relief pursuant to Rule 60(b)(6). More broadly, I fear that the majority's decision will erode the finality of judgments throughout this

Circuit, significantly undermine the important purposes served by Rule 60(b), and increase the workload of busy district court judges who carry the heaviest burden in our system of civil justice. I therefore respectfully dissent from the majority's opinion and would affirm the district court's order.